# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CYNDIE DEE JONES,      )
     )
      Petitioner,      )
     )
     v.      )      **Case No. CIV-16-557-RAW-KEW**
     )
ABOUTANAA EL HABTI, Warden,      )
     )
      Respondent.      )

## OPINION AND ORDER

Now before the court is Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 [Doc. 1].   Petitioner, a *pro se* prisoner in the custody of the Oklahoma Department of Corrections, is currently incarcerated at the Mabel Bassett Correctional Center in McLoud, Oklahoma.

Following a jury trial, Petitioner was convicted of two counts of enabling child sexual abuse (21 O.S.Supp.2010, § 843.5(G)) in Haskell County District Court Case No. CF-2013-174 and was sentenced to eighteen years of imprisonment as to each count, to run concurrently.   She is attacking her convictions and sets forth the following grounds for relief:

I.      Ineffective assistance of counsel deprived Petitioner of a fair trial.

II.      The trial court erred by admitting other crimes evidence.

Respondent concedes the petition is timely and that Petitioner has exhausted her state court remedies for the purpose of federal habeas corpus review.  [Doc. 7 at 2].[1]  The grounds for relief asserted by Petitioner herein were presented to the Oklahoma Court of Criminal Appeals (OCCA). Petitioner did not file an application for post-conviction relief in the state district court.   The following have been submitted for consideration in this matter:

---

[1]      This court's record citations refer to the CM/ECF page numbers in the upper right-hand corner of each document.

A.      Petitioner's direct appeal brief.

B.      State's brief in Petitioner's direct appeal.

C.      Summary Opinion affirming Petitioner's judgment and sentence.

D.      State court record.

E.      Transcripts.

F.      Trial exhibits.

## Standard of Review

Under the Antiterrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## Factual Background

Petitioner is the mother of five children, including a daughter referred to herein as "I.C." [Doc. 8-3 at 148-49].  I.C. was born in 1998.  *Id*. at 22.

In June of 2010, Petitioner, Petitioner's children, and Wayne Rider, Petitioner's boyfriend, moved to a house located in Haskell County, Oklahoma.  *Id*. at 23, 151.  In the fall of 2010, another individual, Robert Bond, moved into the laundry room of the house.  *Id*. at 89, 110, 123.

According to I.C., at some point near the end of 2010 or the beginning of 2011, Mr. Bond and I.C. "got together" and became "[b]oyfriend and girlfriend."  *Id*. at 24, 53, 57.  I.C. was twelve

2

years old and Mr. Bond was twenty years old.  *Id*. at 22, 125.  Mr. Bond testified that I.C.'s mother had knowledge of the relationship and thought Mr. Bond and I.C. "would be good for each other."[2] *Id*. at 98-99.  Petitioner allegedly invited Mr. Bond to move into I.C.'s bedroom, which contained one bed, "[s]ince [Mr. Bond] was with [I.C.]."  *Id*. at 25, 112.  At the beginning of 2011, Mr. Bond moved into I.C.'s room, which was across the hall, and just a few steps, from Petitioner's bedroom. *Id*. at 25, 91, 94-97.

I.C. told the jury that she asked her mother to put her on birth control because she was "sexually active" and wanted to have sexual intercourse with Mr. Bond.  *Id*. at 28, 50-51.  On February 23, 2011, Petitioner took I.C. to the Haskell County Health Department ("Health Department") and I.C. was put on a birth control patch ("Ortho Evra").  [Doc. 8-3 at 60, 128-32, 161-62; Doc. 8-4 at 12].  Mr. Bond told the jury that he was instructed by Petitioner to wait until the birth control patch could take effect before having intercourse with I.C.  [Doc. 8-3 at 99, 106-07].  I.C. testified that she started having sexual intercourse at approximately the same time that she turned thirteen in August of 2011, and Mr. Bond testified that the sexual intercourse began just a few months after he moved into I.C.'s room in early 2011.  *Id*. at 24-25, 94-95.

Over the course of the next year, I.C. was taken to the Health Department on at least seven occasions.  *Id*. at 133, 165.  I.C. switched to an injectable form of birth control ("Depo injection"), received multiple birth control shots, and requested condoms.  *Id*. at 133.  Mr. Bond told the jury that Petitioner would "remind" I.C. and Mr. Bond "to go and get [I.C.'s] shot through the month." *Id*. at 109.

Mr. Bond testified that he purchased a small camper trailer, parked it next to Petitioner's house, and moved into the camper.  [Doc. 8-3 at 101-02; Doc. 8-4 at 4].  Petitioner disagreed with Mr. Bond's testimony and testified that, in February or March of 2011, she and Mr. Rider bought the camper.  [Doc. 8-3 at 168-69].  Be that as it may, I.C. moved her stuff from the bedroom in Petitioner's home to the camper outside, and Mr. Bond and I.C. continued having sexual

---

[2]     At the time of trial, Mr. Bond had been charged in Haskell County Case No. CF-2013-151 with six counts of rape in the first degree (victim under age 14).  [Doc. 8-4 at 5].  Mr. Bond also had a pending motion to revoke and a pending application to accelerate in Haskell County, and other pending charges in Le Flore County, Oklahoma.  [Doc. 7-1 at 16].

intercourse while living together.  *Id*. at 101-03.  Like I.C.'s bedroom, the camper had only one bed, and Petitioner had the opportunity to see this when she entered the camper.  *Id*. at 103.  On one of her visits to the camper, I.C.'s mother reportedly knocked and said, "Hey, are you lovebirds decent?"  *Id*. at 102-03.  At one point, Mr. Bond asked Petitioner to pick up a promise ring for I.C. from Walmart while he was out of town for work.  *Id*. at 108.

I.C. told the jury that she believed her mother knew she was having sex with Mr. Bond because Petitioner "went and put [her] on birth control."  *Id*. at 27-28.  While talking with I.C., Petitioner referred to Mr. Bond as "your old man."  *Id*. at 77.  Mr. Bond was also confident that Petitioner had knowledge of his relationship with I.C., given Petitioner's instructions regarding the birth control, that Petitioner thought Mr. Bond and I.C. "would be good for each other," and that Petitioner "said one time that she heard activity in the bedroom."  *Id*. at 98-99.  Mr. Bond affirmed that he and I.C. were in an open and obvious romantic relationship in Petitioner's presence.  *Id*. at 99.  They did not hide or mask their relationship from Petitioner or anyone in the home or wait until everyone else was asleep before going to bed in the bedroom.  *Id*.  Mr. Bond also affirmed that, after they moved from the bedroom, he and I.C. entered and exited the camper together during both "day and night" when Petitioner was home.  *Id*. at 103.  I.C. and Mr. Bond testified that Petitioner did not remove Mr. Bond from the bedroom or camper, and that she did not call the police on Mr. Bond.  *Id*. at 43-44, 103-04.

Petitioner, her children, Mr. Rider, and Mr. Bond eventually moved, along with the camper, from Haskell County to "Piney Creek" in neighboring Pittsburg County, Oklahoma.  [Doc. 8-3 at 35-37, 107, 173].  Prior to trial, on January 15, 2015, the State filed a notice of intent to present evidence of other crimes ("*Burks* Notice"), alleging that I.C.'s mother continued to allow Mr. Bond to have illegal sexual relations with I.C. after the family relocated to Piney Creek.[3]  [Doc. 8-7 at 93].  The State further alleged that Petitioner allowed another adult male, Jimmy Culley, to move

---

[3]   *See Burks v. State*, 594 P.2d 771, 774-75 (Okla. Crim. App. 1979)*, overruled in part on other grounds by Jones v. State*, 772 P.2d 922, 925 (Okla. Crim. App. 1989).  Oklahoma law requires advance notice to criminal defendants when the State intends to offer evidence of other crimes at trial.  *See also Hale v. Gibson*, 227 F.3d 1298, 1322 (10th Cir. 2000) ("[T]he purpose of *Burks* notice is to ensure that the defendant is not surprised by the admission of other crimes evidence, and to allow the defendant time to be heard on the other crimes evidence before it is presented to the jury.").

into the camper with I.C. at Piney Creek approximately 16 days after Mr. Bond was arrested for non-related crimes. *Id.* According to the State, the evidence was "admissible for the purpose of proving the res gestae of the crime as well as notice of intent, identity, opportunity, absence of mistake, common scheme, plan or system," and in particular, was probative of "lack of mistake." *Id.*

Petitioner thereafter filed a motion in limine, objecting to "the use of the claimed allegations of Mr. Culley in Pittsburg County as being highly prejudicial to [Petitioner] and not probative as to knowledge of the acts committed by Robert Bond in Haskell County." [Doc. 8-7 at 141]. Petitioner requested "that any bad acts or crimes other than involving Robert Bond in Pittsburg County be denied, and further that any bad acts or crimes occurring outside the jurisdiction in Haskell County be strictly limited." *Id.* Petitioner requested that the trial court, "prior to the introduction of any of these uncharged crimes or other bad acts[,] give a limiting instruction to the jury not to consider them as proof of guilt, but only as to a 'lack of mistake' as claimed by the State," and that the instruction "be given again with the final instructions." *Id.*

On February 17, 2015, after jury selection, the issues were argued by the State and defense counsel. [Doc. 8-2 at 119-33]. Petitioner reiterated her objection to the admission of other crimes evidence. *Id.* at 119. The State responded that it intended to introduce the other crimes evidence to show that "under [Petitioner's] supervision and parenting of [I.C.] she allowed these two men to have sex with her minor daughter and that there was no mistake going on here," and that Petitioner "knew or should have known that this crime was being committed under her nose." *Id.* at 120-21. Defense counsel agreed that the other crimes evidence *pertaining to Mr. Bond* was admissible but reasserted that the jury should receive an appropriate limiting instruction. *Id.* at 121-24. Defense counsel, however, continued to claim that the other crimes evidence *pertaining to Mr. Culley* was prejudicial. *Id.* Following offers of proof, the trial judge ruled that the evidence would be admissible, explaining that "[i]f facts develop during the case which would make it appropriate for me to, you know, strike that evidence or not allow it, that's up to objections made at the time it's offered." *Id.* at 134. Counsel was then reminded that "you've got to object at the time of trial." *Id.*

The trial began the following day, and I.C. was the State's first witness. [Doc. 8-3 at 20]. Notably, upon the admission of I.C.'s testimony concerning the other crimes, and later in its final charge, the trial judge gave the jury a limiting instruction that the other crimes evidence should be considered only as to "the defendant's alleged common scheme or plan or absence of mistake or accident." [Doc. 8-3 at 40; Doc. 8-7 at 176]. In sum, I.C. testified that her relationship with Mr. Bond continued after moving to Pittsburg County, and that following his arrest, she became sexually involved with Mr. Culley. [Doc. 8-3 at 37-38, 41-43]. I.C. also told the jury that Petitioner knew about her daughter's relationship with each man at Piney Creek. *Id*. at 37-38, 43. I.C. denied that her relationship with Mr. Bond was hidden from Petitioner or Petitioner's boyfriend, Mr. Rider, and further testified that her mother "seen [Mr. Bond] coming in and out of [the camper] and all of his stuff was in there." *Id*. at 38. This testimony closely matched the testimony of Mr. Bond and Mr. Culley.

Mr. Bond testified that his living arrangement and relationship with I.C. did not change after he moved to Pittsburg County, and that I.C.'s mother lived in another camper located "right next" to his camper. *Id*. at 107-08. Mr. Culley described the same living arrangements and his illegal sexual relations with I.C. in Pittsburg County.[4] *Id*. at 137-41. I.C. first lived with Mr. Bond, and later with Mr. Culley, in the single bed camper at Piney Creek while Petitioner lived "next door." *Id*. at 139-40.

Petitioner took the stand and testified that she was working long hours during the time that the family resided at the Haskell County home. *Id*. at 151-52. The children, according to Petitioner, were often left in the care of her boyfriend, Mr. Rider. *Id*. at 152-53. During direct examination, Petitioner told the jury that she had transported I.C. to the Health Department to get birth control because her daughter was having "really bad irregular periods." *Id*. at 161-62. Petitioner claimed she had asked I.C. if she was sexually active, that her daughter "said no," and that I.C. said "she wasn't planning on being [active]." *Id*. at 163. Petitioner specifically denied

---

[4]     Prior to testifying against Petitioner, Mr. Culley pled guilty to five counts of rape in the second degree in Pittsburg County Case No. CF-2013-377, and was sentenced to a term of 40 years, with all but the first 20 years suspended on each of the five counts, said sentence on each count to run concurrently with each other and with another case, CF-2013-569. [Doc. 8-3 at 136-37; Doc. 8-4 at 60].

6

the birth control had anything to do with I.C. "being sexually active," or "with Mr. Bond and [I.C.]."  *Id.*  Petitioner further explained that I.C. signed an authorization to release confidential information, which authorized Petitioner "to go back to the exam room" for I.C.'s *initial exam*, and it was confirmed that I.C. was not having sex at that time.[5]  [Doc. 8-3 at 163-65; Doc. 8-4 at 2].  Petitioner alleged that she also took her daughter to the Health Department on other occasions but that she was not allowed to be present while I.C. consulted with medical staff.  *Id.* at 165-67.  Petitioner claimed, in other words, that she did not know her child became sexually active after the initial exam, and Petitioner specifically denied that I.C. ever told her that she was sexually active while Petitioner lived in Haskell County.  *Id.* at 167.

Petitioner's other testimony was also in direct contrast to the testimony of her daughter and Mr. Bond.  For instance, Petitioner unequivocally denied knowing that I.C. and Mr. Bond were having sex or that they ever stayed together in I.C.'s bedroom or the camper.  *Id.* at 169-73, 175, 178.  Petitioner claimed that, because she mostly worked night shifts while living in Haskell County, she would not have known I.C. and Mr. Bond were sleeping in the same bed.  *Id.* at 171.  Petitioner told the jury that her daughter referred to Mr. Bond as "Uncle Bondo," and she was therefore under the impression that Mr. Bond was like a family member or friend, and that she would not have allowed I.C. and Mr. Bond to sleep in the same bed.  *Id.*  She denied having any indication that I.C. was having sexual relations with Mr. Bond or Mr. Culley in Pittsburg County, or that she saw them living together, claiming that she first received notice of the sexual relations in April of 2013, when DHS was involved and her daughter called from the shelter.[6]  *Id.* at 174-75.  Petitioner asserted that she was no longer employed and was at home with her kids after moving to Pittsburg County.  *Id.* at 176.

---

[5]     The language within the single-page authorization (ODH Form No. 206) supports this portion of Petitioner's testimony.  [Doc. 8-4 at 2].  It clearly shows I.C.'s information "may be released to the above-named persons [Petitioner] until 2-23-11," the date of I.C.'s first visit.  *Id.*

[6]     Petitioner now contends in her habeas petition that "[a]fter she discovered the relationship[,] she reported the crime at which point Bond was arrested."  [Doc. 1 at 8].  This assertion is at odds with I.C.'s testimony at trial.  I.C. testified that Mr. Bond was arrested on October 7, 2012, and that Petitioner never called the police "on Robert [Bond]."  [Doc. 8-3 at 41, 44].

**Ground I:  Ineffective assistance of counsel deprived Petitioner of a fair trial.**

Petitioner alleges three instances of ineffective assistance of counsel within her habeas petition.[7]  First, Petitioner claims, as she did on direct appeal, that defense counsel was ineffective for failing to challenge her charges on grounds that they violated Oklahoma's multiple punishment statute, Okla. Stat. tit. 21, § 11(A), and the double jeopardy provisions of the Oklahoma and United States Constitutions.  [Doc. 1 at 5; Doc. 7-1 at 19-20, 47].  She complains that she was charged with two counts of enabling child sexual abuse, even though there was just "one continuous act," arguing that the State "relied on the fact that the different location separated the instances."  [Doc. 1 at 5].  Though her daughter had sexual intercourse with Mr. Bond in the Haskell County home (Count One), and also in the camper trailer outside of the home (Count Two), Petitioner argues that the camper trailer was "on the same property that retained the same address as the home."  *Id.*  According to Petitioner, "[c]ounsel failed to object to the repetitive charges and therefore subjected Petitioner to double jeopardy."  *Id.*

Next, Petitioner claims defense counsel "failed to object to the charge" of enabling child sexual abuse under 21 O.S.Supp.2010, § 843.5(G) and failed to "insist on" child endangerment by knowingly permitting sexual abuse pursuant to 21 O.S.Supp.2009, § 852.1(A)(1).  [Doc. 1 at 6].  She argues that "the general statute of [e]nabling allowed a conviction based upon Petitioner's absence rather than the specific statute that required knowledge by Petitioner to be proven."  *Id.*  She further complains that "[t]he specific statute that Petitioner should have been charged under allowed no more than 4 years imprisonment while the once [sic] that she was charged and convicted of carries up to a life sentence."  *Id.*

Lastly, Petitioner claims defense counsel was ineffective for failing to cross-examine one of the State's witnesses, Lisa Sharp.  *Id.*  Ms. Sharp worked as an R.N. at the Health Department where Petitioner took her daughter for birth control.  She complains that, at trial, "[t]he State asserted that Petitioner knew that her daughter was having sex so she took her to the health department," and that "[t]his inference was reinforced by Sharp's testimony and was not fact."  *Id.*

---

[7]      In her brief filed with the OCCA, Petitioner alleged multiple instances of ineffective assistance within two subclaims: (1) counsel's failure to effectively use available evidence, and (2) counsel's failure to object.  [Doc. 7-1 at 37-48].

at 7. Petitioner claims that defense counsel "had the opportunity to present information to the jury that there was not any sex occurring when Petitioner took her daughter to the clinic" and that counsel "failed to put forth a defense that would bring to light the facts for the jury resulting in a certain verdict." *Id*.

Respondent contends, in response, that "the OCCA's finding that Petitioner failed to show prejudice as to her ineffective assistance claims was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of fact." [Doc. 7 at 3]. Respondent provides the following arguments regarding each specific claim:

> Petitioner first argues that the OCCA unreasonably denied relief on her claim that trial counsel was ineffective for failing to challenge her charges on grounds that they violated Oklahoma's multiple punishment statute, Okla. Stat. tit. 21, § 11(A), and the double jeopardy provisions of the Oklahoma and federal constitutions (Propositions I and VI on direct appeal).
>
> \*       \*       \*
>
> The OCCA found no violation of the statutory prohibition against multiple punishments or the constitutional prohibition against double jeopardy and found therefore that Petitioner had not shown error, plain or otherwise. Ex. 1, pages 2-5. As to multiple punishment, the OCCA concluded that Petitioner's convictions did not violate § 11 because she committed separate and distinct offenses that required "dissimilar proof." Ex. 1, pages 3-5. As to double jeopardy, the OCCA explicitly employed the analysis provided in *Blockburger v. United States*, 284 U.S. 299 (1932), pursuant to which it considered whether "§ 843.5(G) prohibits individual acts or a course of action." Ex. 1, page 4. Under the plain language of § 843.5(G), the OCCA found that the statute prohibits individual acts and that "an individual may be punished for every act of sexual abuse they enable." Ex. 1, pages 4-5. As to Petitioner's related ineffective assistance claim, the OCCA expressly applied the Supreme Court's two-part *Strickland* test. Ex. 1, page 10. Insofar as Petitioner demonstrated no error as to her multiple punishment and double jeopardy claims, the OCCA concluded that she had not demonstrated a reasonable probability of a different outcome but for trial counsel's failure to raise these claims. Ex. 1, page 11.

[Doc. 7 at 7-8].

As to Petitioner's second ineffective assistance of counsel claim, Respondent sets forth the following argument:

On direct appeal, the OCCA concluded that enabling child sexual abuse, Okla. Stat. tit. 21, § 843.5(G), and child endangerment by permitting child sexual abuse, Okla. Stat. tit. 21, § 852.1(A)(1), were "merely overlapping" and "[n]either statutory provision is more specific or narrow than the other." Ex. 1, page 6. Accordingly, the prosecutor was free to choose to charge Petitioner under either statute, such that Petitioner had not shown error, plain or otherwise. Ex. 1, page 6. As such, expressly applying *Strickland*'s two-part test, the OCCA concluded that Petitioner had not demonstrated a reasonable probability of a different outcome but for trial counsel's failure to raise this argument in the trial court. Ex. 1, page 11.

[Doc. 7 at 12].

As to the final ineffective assistance claim, Respondent asserts once more that Petitioner is not entitled to habeas relief:

In her § 2254 petition, Petitioner contends that trial counsel should have "present[ed] information to the jury that there was not any sex occurring when Petitioner took her daughter to the clinic." Doc. 1, page 7. However, trial counsel did present such information. Petitioner herself testified that, at I.C.'s first health department appointment, the doctor told Petitioner that I.C. was not sexually active. Ex. 4, Trial Transcript Vol. II, page 301. Furthermore, Ms. Sharp testified that I.C. reported being not sexually active at her first appointment. Ex. 4, Trial Transcript Vol. II, page 268. Thus, contrary to Petitioner's suggestion, the jury had before it testimony from which it could have inferred that Petitioner believed I.C. to be a virgin upon her first visit to the health department.

Given all of the above evidence that was already before the jury, the OCCA reasonably concluded that Petitioner had not shown a reasonable probability of a different result had trial counsel cross-examined Ms. Sharp. Therefore, this claim does not entitle Petitioner to habeas relief.

[Doc. 7 at 17].

In a detailed opinion, the OCCA analyzed and rejected Petitioner's first two underlying claims as follows:

In Proposition One, Appellant contends that her convictions violate the State statutory prohibition against double punishment and constitutional prohibitions against double jeopardy. She concedes that she did not raise this challenge before the District Court and, thus, failed to preserve appellate review of the issue. This Court has long recognized that double jeopardy claims which are not preserved for appeal are reviewable for fundamental error, *i.e.*, plain error review. *Logsdon v. State*, 2010 OK CR 7, ¶ 15, 231 P.3d 1156, 1164 (reviewing multiple

punishment/double jeopardy claims which were not raised in the district court for plain error); *Ashinsky v. State*, 1989 OK CR 59, ¶ 26, 780 P.2d 201, 208 (reviewing multiple punishment claim raised for the first time on appeal for fundamental error). Therefore, we review Appellant's claim pursuant to the test set forth in *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690, and determine whether Appellant has shown an actual error, which is plain or obvious, and which affects her substantial rights. *Id.*, 1994 OK CR 40, ¶¶ 10, 26, 30, 876 P.2d at 694, 699, 701; *Levering v. State*, 2013 OK CR 19, ¶ 6, 315 P.3d 392, 395; *Malone v. State*, 2013 OK CR 1, ¶ 41, 293 P.3d 198, 211-12.  This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice.  *Id.*

Reviewing the record, we find that Appellant has not shown the existence of an actual error.  Appellant's convictions did not arise out of one act but were separate and distinct.  *Sanders v. State*, 2015 OK CR 11, ¶ 6, 358 P.3d 280, 283.  Appellant concedes that the offenses occurred at different geographical locations.  Count One occurred in Appellant's home.  Count Two occurred in a camping trailer.  The record further shows that the offenses occurred at different times.  Count One was completed before Count Two.  Because the offenses occurred at separates [sic] locations and times we find that Section 11 was not violated.  *See Logsdon*, 2010 OK CR 7, ¶ 18, 231 P.3d at 1165 (holding § 11 not violated where offenses occurred at different times on same day and concerned separate victims); *Ziegler v. State*, 1980 OK CR 23, ¶ 10, 610 P.2d 251, 254 (finding that § 11 not violated where burglary was complete upon entry, and evidence of completion of the intended crime was only evidence of intent and not a necessary element of the burglary); *Buchanan v. State*, 1971 OK CR 468, ¶ 9, 490 P.2d 1127, 1129 (recognizing that time and place are factors in determining whether offenses are separate and distinct).

Turning to Appellant's double jeopardy claim, we perform the traditional double jeopardy analysis the United States Supreme Court established in *Blockburger v. United States*, 288 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).  *Head*, 2006 OK CR 44, ¶ 15, 146 P.3d 1141, 1146.  As the present case involves convictions for two counts of the same criminal statute, we determine whether 21 O.S.Supp.2010, § 843.5(G) prohibits individual acts or a course of action.  *Blockburger*, 28[8] U.S. at 301-03, 52 S.Ct. at 181-82.  If the individual acts are prohibited, then each act is punishable separately.  *Id.*, 28[8] U.S. at 302, 52 S.Ct. at 181; *see Burleson v. Saffle*, 278 F.3d 1136, 1142 (10th Cir. 2002).  However, if the statute punishes a course of conduct, then there can only be one penalty.  *Id.*; *see Burleson*, 278 F.3d at 1142.

Reviewing the plain language of Section 843.5(G), we find that the statute prohibits individual acts.  *See State ex. rel. Mashburn v. Stice*, 2012 OK CR 14, ¶ 11, 288 P.3d 247, 250; ("[S]tatutes are to be construed according to the plain and ordinary meaning of their language.").  Section 843.5(G) defines "enabling child sexual abuse" as causing, procuring, or permitting of a willful or malicious act of child

sexual abuse. Thus, an individual may be punished for every act of sexual abuse they enable.

In the present case, the State alleged and the evidence established that Appellant enabled Robert Bond to sexually abuse her twelve-year-old daughter at two separate geographical locations. As such, we find that the offenses each required "dissimilar proof." *Doyle v. State*, 1989 OK CR 85, ¶ 15, 785 P.2d 317, 323. Because Count One was completed before Count Two, both counts could be separately punished. *Blockburger*, 2[84] U.S. at 302-03, 52 S.Ct. at 181, *citing Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915). Accordingly, we find that Appellant has not shown that error, plain or otherwise, occurred. Proposition One is denied.

In Proposition Two, Appellant contends that she should have been charged with the specific crime of Child Endangerment by Knowingly Permitting Sexual Abuse pursuant to 21 O.S.Supp.2009, § 852.1(A)(1) instead of Enabling Child Sexual Abuse under 21 O.S.Supp.2010, § 843.5(G). She concedes that she waived appellate review of this issue for all but plain error, when she did not raise this challenge before the District Court. *Dangerfield v. State*, 1987 OK CR 185, ¶ 3, 742 P.2d 573, 574. Therefore, we review Appellant's claim for plain error pursuant to the test set forth in *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690. *Levering*, 2013 OK CR 19, ¶ 6, 315 P.3d at 395; *Malone*, 2013 OK CR 1, ¶ 41, 293 P.3d at 211-212.

An examination of the two statutes in the present case reveals that they are merely overlapping. *Satepeahtaw v. State*, 1979 OK CR 47, ¶ 14, 595 P.2d 805, 808. Neither statutory provision is more specific or narrow than the other. *State v. Franks*, 2006 OK CR 31, ¶¶ 6-7, 140 P.3d 557, 558-59; *McWilliams v. State*, 1989 OK CR 39, 777 P.2d 1370, 1372 (holding Section 11 mandates that a crime be brought under specific statutory provisions rather than more general codifications). Therefore, the prosecutor was free to elect to charge Appellant under either of the statutes. *State v. Haworth*, 2012 OK CR 12, ¶ 13, 283 P.3d 311, 316; *Satepeahtaw*, 1979 OK CR 47, ¶ 14, 595 P.2d at 808. Accordingly, we find that Appellant has not shown that error, plain or otherwise, occurred. Proposition Two is denied.

*Jones v. State*, No. F-2015-352, slip op. at 2-6 (Okla. Crim. App. May 11, 2016) (unpublished) (footnotes omitted). [Doc. 7-3 at 2-6].

The OCCA then analyzed and denied relief on all of the instances of ineffective assistance alleged by Petitioner:

In Proposition Six, Appellant challenges the effectiveness of defense counsel. This Court reviews ineffective assistance of counsel claims under the two-part test mandated by the United States Supreme Court in *Strickland v. Washington*, 466

U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Malone v. State*, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206.

Appellant raises two separate claims of ineffective assistance. She asserts that defense counsel was ineffective for failing to preserve appellate review of the challenges that she raised in Propositions One through Four. We determined that Appellant had not shown that error, plain or otherwise occurred in each of these propositions. As such, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to raise the challenges that she now raises on appeal. *Andrew v. State*, 2007 OK CR 23, ¶ 99, 164 P.3d 176, 198; *Glossip v. State*, 2007 OK CR 12, ¶¶ 110-12, 157 P.3d 143, 161.

Appellant further asserts that defense counsel was ineffective for failing to use available evidence at trial. She set forth six instances where she alleges that defense counsel failed to use available evidence.

\*       \*       \*

Fourth, Appellant asserts that counsel was ineffective for failing to cross-examine R.N., Lisa Sharp. She argues that counsel should have established that the medical release that the victim signed at the County Health Department was only valid for her initial visit. The record reveals that defense counsel did not cross-examine Sharp. However, we note that counsel developed similar testimony when Appellant took the stand and testified to the limited information the Health Department gave her. We further note that the Health Department's records were not the source of Appellant's knowledge of the sexual abuse. Instead, Bond and the victim both testified that Appellant encouraged the relationship and took the victim to the Health Department to get her on birth control so that Bond could have sexual intercourse with her. Accordingly, we find that Appellant has not shown that she was prejudiced by counsel's failure to cross-examine Sharp. *Id*.

\*       \*       \*

. . . . Proposition Six is denied.

*Jones*, slip op. at 10-11, 13-14, 16. [Doc. 7-3 at 10-11, 13-14, 16].

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. To prevail on her claim of ineffective assistance of counsel, the defendant must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must overcome the strong presumption that counsel's conduct fell within the wide range of professional conduct, including trial strategy. *Id*. at 689. To prove prejudice,

the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The Supreme Court has provided additional guidance regarding the application of *Strickland* in habeas corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original). The Court further explained:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

14

*Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). *See also Hooks v. Workman*, 689 F.3d 1148, 1187 (10th Cir. 2012).

Petitioner first claims defense counsel was ineffective for failing to challenge her charges on grounds that they violated Oklahoma's multiple punishment statute, Okla. Stat. tit. 21, § 11(A), and the double jeopardy provisions of the Oklahoma and United States Constitutions. This court is not persuaded.

The OCCA reviewed the record, finding that Petitioner had not shown the existence of an actual error. The OCCA also concluded that Petitioner's convictions did not arise out of one act but were separate and distinct. In her habeas petition, Petitioner clearly disagrees with the OCCA's analysis. Nonetheless, the OCCA noted that Count One occurred in Petitioner's home, that Count Two occurred in a camping trailer, and that the record showed the offenses occurred at different times. The OCCA then found that, because the offenses occurred at separate locations and times, Section 11 was not violated.[8] As to double jeopardy, the OCCA explicitly employed the analysis provided in *Blockburger v. United States*, 284 U.S. 299 (1932), explaining that "[a]s the present case involves convictions for two counts of the same criminal statute, we determine whether 21 O.S.Supp.2010, § 843.5(G) prohibits individual acts or a course of action." [Doc. 7-3 at 4]. Under the plain language of § 843.5(G), the OCCA found that the state statute prohibits individual acts, and "[t]hus, an individual may be punished for every act of sexual abuse they enable." *Id.* at 4-5. The OCCA's conclusion was not unreasonable.

The OCCA also correctly applied *Strickland* to the related ineffective assistance claim, concluding that Petitioner had not demonstrated a reasonable probability of a different outcome but for trial counsel's failure to raise these claims. Indeed, defense counsel is not ineffective for failing to raise an issue that is meritless. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (observing that "if the issue is meritless, its

---

[8] Respondent reminds the court that "Section 11 bars multiple punishments based on a single act or omission. Okla. Stat. tit. 21, § 11(A); *Pavatt v. State*, 159 P.3d 272, 281 (Okla.Crim.App. 2007). Where there are a series of separate and distinct crimes, however, § 11 is not violated. *Davis v. State*, 993 P.2d 124, 126 (Okla. Crim. App. 1999)." [Doc. 7 at 8 n. 1].

omission will not constitute deficient performance."). The OCCA's rejection of Petitioner's ineffective-assistance claim was not an unreasonable application of Supreme Court law.

Petitioner next claims counsel was ineffective for failing to object to the charge of enabling child sexual abuse (*see* 21 O.S.Supp.2010, § 843.5(G)), arguing that the crime of child endangerment by knowingly permitting sexual abuse (*see* 21 O.S.Supp.2009, § 852.1(A)(1)) was more specific and carried a lesser punishment. A similar argument was asserted by a state prisoner in *Haney v. Addison*, Case No. 07-6269, 275 Fed.Appx. 802 (10th Cir. Apr. 30, 2008) (unpublished).[9] Haney was convicted in Oklahoma state court on two counts of making lewd or indecent proposals to a child under 16 after two or more convictions of the same offense. *Haney*, 275 Fed.Appx. at 804. The OCCA affirmed the convictions and sentences, and Haney filed a § 2254 petition in federal district court, arguing in part that the trial court improperly charged him with making lewd or indecent proposals to a child under 16 instead of the more specific crime of solicitation of child prostitution. *Id*. The Circuit denied a Certificate of Appealability and dismissed the appeal, and provided the following guidance:

> Mr. Haney claims that he was improperly charged with making lewd or indecent proposals to a child under 16, which carries a maximum life sentence for a third or subsequent conviction, *see* Okla. Stat. tit. 21, § 1123, instead of the more specific crime of solicitation of child prostitution, which carries a maximum 10–year sentence, *see id.* §§ 1029(B), 1031. He argues that under Oklahoma law a "prosecutor's discretion to charge a defendant with a general crime is curbed when the legislature has passed a more specific statute criminalizing the behavior at issue and there is evidence supporting the elements of both." Aplt. Br. at 13. The OCCA ruled, however, that the charges against Mr. Haney were proper. Op. at 3–4, *Haney v. State,* No. F–2005–1123 (Okla.Crim.App., Jan. 30, 2007) (*Haney*). In any event, whether a prosecutor must proceed under one statute rather than another is a matter of state law, and relief is available under § 2254 only for a violation of federal law. *See* § 2254(a). Mr. Haney cites to various provisions of the United States Constitution, but he fails to explain how the charges violated any of these provisions, and we can discern no violation. No reasonable jurist could debate that the state court's denial of relief was contrary to or an unreasonable application of clearly established federal law. To the extent that he claims ineffective assistance of counsel because his trial attorney failed to raise this issue, his claim must be denied because the issue lacks merit. *See Sperry v. McKune,* 445 F.3d 1268, 1275

---

[9]     A court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

(10th Cir. 2006) (counsel not ineffective for failing to raise issue when issue lacks merit).

*Haney*, 275 Fed.Appx. at 805.

In the instant case, the OCCA analyzed different state statutes but ruled that the charges against Petitioner were proper.  The OCCA concluded that enabling child sexual abuse under Okla. Stat. tit. 21, § 843.5(G), and child endangerment by permitting child sexual abuse under Okla. Stat. tit. 21, § 852.1(A)(1), were "merely overlapping," that "[n]either statutory provision is more specific or narrow than the other," and that the prosecutor was free to choose to charge Petitioner under either statute.  [Doc. 7-3 at 6].  The OCCA's denial of relief was not contrary to or an unreasonable application of clearly established federal law.

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  The United States Supreme Court has further explained that "[t]he prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause."  *United States v. Batchelder*, 442 U.S. 114, 125 (1979); *see also United States v. Parsons*, 967 F.2d 452, 456 (10th Cir. 1992) ("Prosecutors are not required to prosecute under another statute perhaps covering the same wrongful acts merely because the other statute imposes a lesser penalty.")  Petitioner's underlying claim, like the one in *Haney*, raises an error of state law, and Petitioner has failed to explain how her charges violate any provision of the U.S. Constitution.  Counsel cannot be ineffective for failing to raise an issue when the issue lacks merit.

Petitioner also alleges ineffective assistance of counsel for failure to cross-examine Lisa Sharp, an R.N. at the Health Department.  Petitioner now claims that "she went to the Health Department to place her daughter on birth control because [Petitioner] was concerned that [I.C.] may be having or want to have sex," and that "[s]ince her daughter brought it up [Petitioner] thought it best that if she could not keep her daughter from sex[,] she could keep her from getting pregnant if she did have sex."  [Doc. 1 at 6].  She reminds the court that I.C. "signed a medical release that was only valid for [I.C.'s] initial visit," during which time "Petitioner was consulted

17

and told that her daughter was a virgin," and that afterwards, "Petitioner was not allowed to know anymore [sic] of the medical findings upon the daughter's wishes." *Id*. at 6-7. She then complains that "[t]he State asserted that Petitioner knew that her daughter was having sex so she took her to the health department," and that "[t]his inference was reinforced by Sharp's testimony and was not fact." *Id*. at 7. Petitioner contends defense counsel was ineffective because he "had the opportunity to present information to the jury that there was not any sex occurring when Petitioner took her daughter to the clinic" and that counsel "failed to put forth a defense that would bring to light the facts for the jury resulting in a certain verdict." *Id*.

It is true that defense counsel did not cross-examine Ms. Sharp, but this is of little import. As summarized in the State's direct appeal brief, the authorization to release confidential information, and Ms. Sharp's testimony, "simply do not create the confusion that the [Petitioner] suggests." [Doc. 7-2 at 43]. Petitioner took the stand and set forth her reasons for taking I.C. to the Health Department. She testified to the limited information that the Health Department gave her and explained that the authorization *only* allowed her to be present for her daughter's initial visit with the Health Department staff. She specifically told the jury that, at the time she took her daughter to the Health Department, her daughter was believed to be a virgin, and this testimony was supported by I.C.'s testimony and health records. I.C. reported to Ms. Sharp that she was not sexually active at the time of the first visit. [Doc. 8-3 at 132].

Additionally, as noted by the OCCA, the Health Department's records were not the source of Petitioner's knowledge of the sexual abuse. During cross-examination, I.C. specifically told the jury that "I came to [Petitioner] and told [Petitioner] that I wanted to be put on birth control so I could have sexual intercourse." [Doc. 8-3 at 51]. I.C. explained that she was "sexually active" prior to being on birth control, but that she was not actually having "sexual intercourse." *Id*. I.C. testified that after she was on birth control, at approximately the same time as her thirteenth birthday, she did have sexual intercourse.

The jury also heard testimony that Mr. Bond and I.C. were in a sexual relationship, as boyfriend and girlfriend, and that the couple initially slept together in a bedroom with one bed, just steps away from Petitioner's bedroom. Mr. Bond testified that he later purchased a small camper trailer, parked it next to Petitioner's house, and moved into the camper. I.C. also moved

her stuff from the bedroom to the camper, and Mr. Bond and I.C. continued having sexual intercourse while living together in the camper. Like I.C.'s bedroom, the camper had only one bed, and Petitioner had the opportunity to see this when she entered the camper.

Mr. Bond also testified in no uncertain terms that *Petitioner invited* Mr. Bond to move into I.C.'s bedroom "[s]ince [Mr. Bond] was with [I.C.]," and that he was told *by Petitioner* to wait on having sexual intercourse with I.C. until the birth control could take effect. [Doc. 8-3 at 99, 106-07, 112]. Petitioner's birth control instruction, along with her other alleged comments (i.e., stating that Mr. Bond and I.C. "would be good for each other," acknowledging that she heard "activity" in the bedroom, asking if the "lovebirds" in the camper "were decent," referring to Mr. Bond as I.C.'s "old man," reminding Mr. Bond and I.C. to get the monthly shots), provided even more evidence that Petitioner willfully permitted the sexual abuse of her daughter. Simply put, the evidence supporting each of Petitioner's convictions was strong. Petitioner has not shown that she was prejudiced by counsel's failure to cross-examine Ms. Sharp, and thus, counsel was not deficient under *Strickland*.

The court finds the OCCA's decision on the claim was not contrary to, or an unreasonable application of *Strickland*, and the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Ground I is denied.

**Ground II: The trial court erred by admitting other crimes evidence.**

In Ground II, Petitioner claims the trial court erred when it allowed the State to introduce other crimes evidence at trial, and in particular, that the "limiting instruction concerning Burks evidence did not protect Petitioner's right and ensure a fair trial." [Doc. 1 at 7]. Petitioner references the *Burks* notice submitted before trial, and acknowledges that defense counsel filed a motion in limine asking the trial court to restrict the other crimes evidence based on its prejudicial effect against Petitioner. *Id.* at 7-8. Nevertheless, Petitioner claims the State used the evidence to show "lack of mistake," and argues lack of mistake "does not show affirmative action such as permission." *Id.* at 8. Petitioner further claims the OCCA "erroneously decided that the trial court

19

did not abuse its discretion when it admitted the evidence concerning Culley." *Id*. According to Petitioner, "testimony under *Burks*" requires proof of other crimes by clear and convincing evidence, and Petitioner argues "[t]here was no proof that Petitioner permitted the relationship between her daughter and Culley." *Id*. She contends that she "was highly prejudiced by the admission of this testimony that relieved the State of its burden of proof" and should therefore be granted a modification of her sentence or a new trial. *Id*.

In response, Respondent sets forth the following argument:

Petitioner also fails to show that the OCCA's adjudication of this claim was based on an unreasonable application of any clearly established Supreme Court law or an unreasonable factual determination. The OCCA reasonably concluded that the other crimes evidence had "great probative value as to whether [Petitioner] permitted her daughter to be sexually abused." Ex. 1, page 10. In particular, evidence that Petitioner allowed I.C. to have sleeping arrangements with Mr. Bond and Mr. Culley in Pittsburg County similar to those I.C shared with Mr. Bond in Haskell County and knew that both men had sexual relations with I.C. while living with her in Pittsburg County was highly relevant to Petitioner's knowledge and lack of mistake as to Mr. Bond's sexual relations with I.C. in Haskell County. Furthermore, in light of the trial court's limiting instructions, trial counsel's failure to object to the other crimes evidence concerning Mr. Bond, and the overwhelming evidence that Petitioner willfully permitted the sexual abuse of her daughter, it cannot be said that Petitioner's trial was rendered fundamentally unfair by the admission of the other crimes evidence.

    *      *      *

. . . . Petitioner argues now, as she did on direct appeal, that "lack of mistake does not show affirmative action such as permission" and that the "State was attempting to substitute knowledge with permission." Doc. 1, page 8; Ex. 2, page 27. The OCCA's rejection of this argument was eminently reasonable. Ex. 1, pages 9-10. Contrary to Petitioner's argument, whether she had knowledge of I.C.'s sexual relations with Mr. Bond and was not mistaken about the nature of their relationship was highly pertinent to whether she *permitted* child sexual abuse. Specifically, "permit" was defined to the jury as "authoriz[ing] or allow[ing] for the care of the child by an individual when [Petitioner] knew or reasonably should have known that the child would be placed at risk of . . . sexual abuse." Ex. 4, Original Record, page 172. Thus, the State's burden in showing that Petitioner permitted child sexual abuse required it to prove that she knew or reasonably should have known that I.C. would be at risk of sexual abuse by Mr. Bond when Petitioner repeatedly allowed I.C. to share sleeping quarters with Mr. Bond in Haskell County.

Petitioner also contends that the other crimes evidence was improperly admitted because there was insufficient proof that she committed the other crimes. Doc. 1, page 8. To the contrary, the evidence, as outlined above, overwhelmingly showed that Petitioner enabled the sexual abuse of I.C. in Pittsburg County by allowing her to share a camper first with Mr. Bond and then with Mr. Culley while I.C. was openly engaging in romantic relationships with the men. In sum, Petitioner's arguments fail to show that the OCCA unreasonably found that the admission of the other crimes evidence did not violate fundamental fairness.

[Doc. 7 at 25-27].

On direct appeal, the OCCA rejected Petitioner's claim as follows:

In Proposition Five, Appellant contends that the trial court erred when it allowed the State to introduce evidence that she also permitted Robert Bond and James Culley to rape and sexually abuse her daughter in Pittsburg County after the commission of the charged offenses. Appellant argues that this evidence constituted inadmissible other crimes evidence. She further argues that this evidence was clearly more prejudicial than probative.

Appellant challenged the State's introduction of the evidence concerning Culley, thus we review the trial court's ruling admitting this evidence for an abuse of discretion. *Marshall v. State*, 2010 OK CR 8, ¶ 24, 232 P.3d 467, 474. However, Appellant waived appellate review of her challenge to the evidence concerning Bond when she failed to object to this evidence at trial. *Engles v. State*, 2015 OK CR 17, ¶ 2, 366 P.3d 311, 313. Therefore, we review this part of her claim pursuant to the test for plain error set forth in *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690. *Engles*, 2015 OK CR 17, ¶ 2, 366 P.3d 313.

Reviewing the record in the present case, we find that Appellant has not shown that error, plain or otherwise, occurred. The State timely filed its Notice of Intent to Introduce Evidence of Other Crimes. Because the challenged evidence established that Appellant knew that both Bond and Culley sexually abused the victim in Pittsburg County, it was properly admissible to establish whether Appellant permitted Bond to sexually abuse her daughter in Haskell County. *Taylor v. State*, 1982 OK CR 88, 646 P.2d 615, 616 (holding other crimes evidence admissible to show knowledge where evidence shows defendant's intent or guilty knowledge). As Appellant's explanation of the events did not necessarily remove the issue of accident or mistake, the evidence was also admissible under the absence of mistake or accident exception. *Cole v. State*, 2007 OK CR 27, ¶¶ 12-21, 164 P.3d 1089, 1094-95.

We further find that the probative value of the challenged evidence was not substantially outweighed by the danger of unfair prejudice. *Mayes v. State*, 1994 OK CR 44, ¶ 77, 887 P.2d 1288, 1310. The evidence held great probative value as to whether Appellant permitted her daughter to be sexually abused, *i.e.*, knew or

reasonably should have known that she would be placed at risk of sexual abuse. *See* Inst. No. 4-40D, OUJI-CR(2d) (Supp.2012) (defining "permit" as "knew or reasonably should have known that the child would be placed at risk of sexual abuse"). The trial court issued contemporaneous and final limiting instructions to the jury concerning its consideration of the evidence. As such, we find that the trial court did not abuse its discretion when it admitted the evidence concerning Culley. Appellant has not shown that error, plain or otherwise, occurred when the trial court admitted the evidence concerning Bond. Proposition Five is denied.

*Jones*, slip op. at 9-10. [Doc. 7-3 at 9-10].

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson,* 191 F.3d 1257, 1275 (10th Cir. 1999); *see also Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012). State court evidentiary rulings are based on questions of state law and this court "may not provide habeas corpus relief . . . unless [those rulings] rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotations omitted); *see also Watson v. Howard*, Case No. 04-6074, 123 Fed.Appx. 910, 917 (10th Cir. Feb. 17, 2005) (unpublished) ("[Petitioner] has not demonstrated that the lack of *Burks* notice of other crimes evidence rendered his trial fundamentally unfair, and this claim therefore does not warrant habeas relief.").

This court is not persuaded by Petitioner's arguments in Ground II. First, in the instant case, the State timely provided a *Burks* notice to the defense, meaning Petitioner was not unfairly surprised by the evidence at trial.[10] Second, under Oklahoma law, "[e]vidence of other offenses may be admissible where it tends to establish motive, intent, absence of mistake or accident, identity or a common scheme or plan which embraces the commission of two or more crimes so related to each other that proof of one tends to establish the other." *Burks,* 594 P.2d at 772. As explained by the OCCA, the challenged evidence was properly admissible to establish whether Petitioner permitted Mr. Bond to sexually abuse I.C. in Haskell County, and because Petitioner's

---

[10]    The *Burks* notice was filed on January 15, 2015, and the first day of jury trial (voir dire) was on February 17, 2015.

explanation of the events did not necessarily remove the issue of accident or mistake, the evidence was also admissible under the absence of mistake or accident exception.

Moreover, the probative value of the challenged evidence was not substantially outweighed by the danger of unfair prejudice.  As noted by the OCCA, the challenged evidence "held great probative value as to whether [Petitioner] permitted her daughter to be sexually abused, *i.e.*, knew or reasonably should have known that she would be placed at risk of sexual abuse."[11]  [Doc. 7-3 at 10].  Lastly, and of particular importance, the trial court issued contemporaneous and final limiting instructions to the jury concerning its consideration of the evidence, and "[a] jury is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

 A federal habeas court "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (citing *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998).  "An inquiry into the fundamental fairness of the trial requires an examination of the entire proceedings, including the strength of the evidence against the [Petitioner]."  *Hanson v. Sherrod*, 797 F.3d 810, 843 (10th Cir. 2015).  Here, the evidence against Petitioner was strong, regardless of the other crimes evidence.  The testimony of her daughter, who was sixteen at the time of trial, was clear, concise, and amply supported Petitioner's convictions. The court is also mindful that I.C.'s testimony closely matched the testimony of Mr. Bond. Petitioner has not demonstrated that the admission of the other crimes evidence rendered her trial fundamentally unfair.

The court finds the OCCA's decision regarding the admissibility of the other crimes evidence was not contrary to, or an unreasonable application of, Supreme Court law, and Petitioner was not deprived of a fundamentally fair trial.  Federal habeas relief is denied on Ground II.

---

[11]     The definition of "permit" is found on page two of Jury Instruction No. 22, titled "CRIMES AGAINST CHILDREN – DEFINITIONS."  [Doc. 8-7 at 183].  The instruction defines "Permit" as "[t]o authorize or allow for the care of the child by an individual when the person authorizing or allowing such care knew or reasonably should have known that the child would be placed at risk of neglect or sexual abuse."  *Id*.

**Certificate of Appealability**

The court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2).  In addition, she has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Therefore, a certificate of appealability shall be denied.

ACCORDINGLY, Petitioner's petition for a writ of habeas corpus [Doc. 1] is DENIED, and a certificate of appealability is DENIED.

It is so ordered this 17th day of April, 2020.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA